**United States District Court**
For the Northern District of California

1
2
3
4
5                    UNITED STATES DISTRICT COURT
6                   NORTHERN DISTRICT OF CALIFORNIA
7
8  KENNETH CARRETHERS,                    No. C-09-1101 EMC
9          Plaintiff,
10      v.                                **FINAL PRETRIAL CONFERENCE
                                          ORDER**
11 BAY AREA RAPID TRANSIT, et al.,
12         Defendants.
13 _____/
14
15         A Final Pretrial Conference was held in this matter on November 8, 2011.  Pursuant to

16 Federal Rule of Civil Procedure 16(e), this order memorializes the rulings made and stipulations

17 entered into on that day.  Also attached are the Court's standing Guidelines for Trial.

18                **I.   TRIAL DATE & LENGTH OF TRIAL**

19         The trial shall begin on November 21, 2011, at 8:30 a.m., Courtroom 5, 17th Floor.  There

20 shall be a total of seven court days.

21         Trial shall be conducted from 8:30 a.m. to 4:00 p.m. (or slightly longer to finish a witness)

22 on November 22, 23, 29, and December 1, with two 15-minute breaks and one 40-minute lunch

23 break.  Trial shall be conducted from 8:30 a.m. to 2:00 p.m. (or slightly longer to finish a witness)

24 on November 21, 28 and 30, with one 15-minute break and one 40-minute lunch break.  Parties must

25 arrive by 8:00 a.m. on November 21, as well as other days as needed for any matters to be heard out

26 of the presence of the jury.  Jury questionnaires will be completed on November 18.  The jury will

27 be called at 8:30 a.m. on November 21.  The trial week is Monday through Thursday, excluding

28

1   holidays.  Fridays are dark.  If there are matters that need to be discussed (*e.g.*, objections to exhibits

2   or witnesses), counsel should be prepared to meet with the Court at 8:00 a.m.

3       Plaintiffs shall have 14 hours to present their evidence, and Defendants 14 hours. This

4   includes direct examination by one side of its witnesses, cross-examination by that side of the

5   opposing party's witnesses, and any rebuttal, as well as opening statements and closing arguments.

6   It does not include jury selection and jury instructions.

7       The claims proceeding to trial are as follows: (1) violation of § 1983 due to excessive force

8   (against all individual Defendants), (2)  violation of § 1983 due to malicious prosecution (against

9   Defendant Mehserle), (3) violation of California Civil Code § 52.1 (against all Defendants), and (4)

10  battery (against Defendant Mehserle).

## II.  MOTIONS IN LIMINE

12      The Court addresses each motion in limine in turn below.  The Court's rulings are without

13  prejudice to context-specific objections and arguments regarding admissibility during trial.

14  A.   Plaintiff's Motion in Limine ("MIL") No. 1 - Prior Acts of Mr. Carrethers

15      In their first motion, Plaintiff asks the Court to exclude any evidence of Plaintiff's prior

16  arrests, convictions, and previous drug and alcohol use.  Defendants do not oppose the motion,

17  although they would seek to introduce it as rebuttal "should Plaintiff introduce evidence, in

18  whatever form, affirmatively suggesting the absence of a prior history of arrests, convictions and

19  drug and alcohol use."  Opp. at 1.  The Court therefore **GRANTS** the motion to exclude this

20  evidence, although it will not bar Plaintiffs from moving to introduce the evidence if Defendants

21  open the door to such evidence.

22  B.   Plaintiff's MIL No.2 - Hospital Records & Statements

23      Plaintiff's second motion seeks to admit Plaintiff's hospital records from his November 15,

24  2008 visit to ValleyCare Medical Center Emergency Department.  Plaintiff seeks to admit both the

25  records and his statements, "They kicked the shit out of me!" and that he was kneed, elbowed, and

26  struck with fists.

27      Plaintiff was taken to ValleyCare ("VC") for medical clearance prior to jail, due to the extent

28  of his injuries.  MIL 2 at 1.  There, in the presence of Defendant Mehserle, Nurse Morales asked

Plaintiff what caused his injuries and Plaintiff responded, "They kicked the shit out of me!" and that he was kneed, elbowed, and struck with fists. Plaintiff contends that the records are admissible pursuant to the parties' stipulation, and that the statements are admissible under at least one of the following theories: (1) Adopted party admission under 801(d)(2)(B); (2) Statement for medical diagnosis under 803(4); (3) Statement of mental, emotional, or physical condition under 803(3); or (4) Excited utterance under 803(2).

### 1. Hospital Records

The parties stipulated to the foundation and authenticity of the hospital records under Fed. R. Evid. 803(6), and Defendants' opposition brief does not contest the admission of the records. Therefore, the Court **GRANTS** the motion to admit these records.

### 2. Plaintiff's Statements

Defendants oppose the admission of Plaintiff's statements on the grounds that it is hearsay outside of any exception.

The Court finds that Plaintiff's statement that he was "kneed, elbowed, and struck with fists" qualifies as an exception to the hearsay rule under Fed. R. Evid. 803(4), which provides for the admission of "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." Plaintiff's statement satisfies the requirement here, as the nurse asked him the cause of his injury and he responded, providing details that are helpful for diagnosis and treatment.

On the other hand, the Court finds that Plaintiff's other statement - "They kicked the shit out of me!"- does not qualify as a statement for purposes of medical diagnosis or treatment, nor does it qualify for any other exception to the hearsay rule.

Accordingly, the Court **GRANTS** Plaintiff's MIL to admit the statement that Plaintiff was "kneed, elbowed, and struck with fists," and **DENIES** the MIL to admit the statement, "They kicked the shit out of me!"

C.   Plaintiff's MIL No.3 - Expert Legal Conclusions

United States District Court

For the Northern District of California

Plaintiff's third MIL seeks to limit Defense expert Jeffrey Martin's testimony by precluding him from testifying in four ways: (1) testimony regarding legal conclusions or opinions; (2) opinions not offered in Mr. Martin's report; (3) opinions based on speculation or improper assumptions; and (4) opinions lacking probative value for the jury.

### 1.    Legal Conclusions

Plaintff asserts that Mr. Martin, a lawyer, has repeatedly offered legal conclusions and opinions regarding the events at issue in this case.  Such testimony, Plaintiff contends, goes beyond his purpose of testifying as to whether Defendants followed police procedures into whether Defendants violated the law.   Purported legal opinions offered by Mr. Martin include testimony that Defendants had probable cause to arrest Plaintiff, that Mehserle was "legally authorized" to use force against Plaintiff, and that the force used by Defendants was "objectively reasonable." Defendants argue in opposition that an expert is permitted to testify as to ultimate issues in the case, and that Mr. Martin's testimony is therefore admissible.

This Court has broad discretion to accept or reject expert testimony. *See Davis v. Mason County*, 927 F.2d 1473, 1484 (9th Cir. 1991), *superseded by statute on other grounds as recognized by Davis v. City and County of San Francisco*, 976 F.2d 1536 (9th Cir. 1992) ("A trial court has broad discretion in admitting and excluding expert testimony and its decisions will not be reversed unless 'manifestly erroneous.'").  If such testimony is based on expertise "beyond the knowledge of the average layman" and the testimony would "aid the trier of fact in his search for truth," the court may admit it. *Shad v. Dean Witter Reynolds, Inc.*, 799 F.2d 525, 529 (9th Cir. 1986) (quotations omitted).

Rule 704 of the Federal Rules of Evidence provides that experts may, with exceptions not applicable here, offer opinions on "an ultimate issue to be decided by the trier of fact."  Fed. R. Evid. 704(a).  However, such testimony may not extend to offering legal conclusions. *See Muhktar v. California State University, Hayward*, 299 F.3d 1053, 1065 n. 10 (9th Cir. 2002); *McHugh v. United Service Auto. Ass'n*, 164 F.3d 451, 454 (9th Cir. 1999) (in insurance case, stating that expert "testimony cannot be used to provide legal meaning or interpret the policies as written"); *Engman v. City of Ontario*, No. EDCV 10–284 CAS (PLAx), 2011 WL 2463178, at *8 n.3 (C.D. Cal. June 20,

United States District Court

For the Northern District of California

2011) (citing Martin A. Schwartz, Section 1983 Litigation: Federal Evidence § 6.07[B] (4th ed. 2010 Supp.) ("The federal courts consistently disfavor ultimate expert opinions when they are couched as legal conclusions.")).  As explained in the 1972 advisory committee notes:

> The abolition of the ultimate issue rule does not lower the bars so as to admit all opinions. Under Rules 701 and 702, opinions must be helpful to the trier of fact, and Rule 403 provides for exclusion of evidence which wastes time. These provisions afford ample assurances against the admission of opinions which would merely tell the jury what result to reach, somewhat in the manner of the oath-helpers of an earlier day. They also stand ready to exclude opinions phrased in terms of inadequately explored legal criteria. *Thus the question, "Did T have capacity to make a will?" would be excluded, while the question, "Did T have sufficient mental capacity to know the nature and extent of his property and the natural objects of his bounty and to formulate a rational scheme of distribution?" would be allowed.*

Fed. R. Evid. 704, 1972 proposed rules (emphasis added).  While the distinction between "ultimate issues" and "legal conclusions" has led to some confusion, the Ninth Circuit has held that experts may not offer opinions as to whether officers, *e.g.*, had probable cause.  *See Torres v. City of Los Angeles*, 548 F.3d 1197, 1214 n.11 (9th Cir. 2008) ("[T]he district court abused its discretion in denying [plaintiffs'] motion in limine seeking to bar Defendants' witnesses from testifying as to their own opinion about whether there was probable cause to arrest Torres.") (citing *Stuart v. United States*, 23 F.3d 1483, 1487 (9th Cir. 1994) ("The questions that elicited the objections appeared to seek an opinion on whether probable cause existed to stop the Hyundai—a question that Mr. Alpert was not as well-qualified as the trier of fact to answer.  Moreover, "standard police procedure," as developed by an expert, may not shed light on what is reasonable conduct for border patrol officers. There was no abuse of discretion [in excluding the testimony].")).

Other courts have excluded similar testimony on the grounds that "[w]hen an expert undertakes to tell the jury what result to reach, this does not aid the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's." *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994)); *see United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994) (describing previous ruling that expert testimony was inadmissible as being based on the "concern[] that the witness repeatedly tracked the exact language of the statutes and regulations which the defendant had allegedly violated and used judicially defined terms such as 'manipulation,' 'scheme to defraud' and 'fraud' in opining on the defendant's conduct.") (citations omitted)*; Engman*, 2011 WL 2463178

1  at *3, *8 (excluding testimony stating that certain conduct constitutes a violation of a section of the

2  California Penal Code, and testimony as to whether the officers had probable cause); *Moses v.*

3  *Danek Medical, Inc.*, No. CV–S–95–512PMPRLH, 1998 WL 34024164, at *3 (D. Nev. Nov. 30,

4  1998) (excluding expert testimony where "Plaintiff has merely obtained an expert to bless and

5  restate her legal argument"); *Rizzo v. Edison, Inc.*, 419 F.Supp.2d 338, 348 (W.D.N.Y. 2005)

6  ("[T]he issue of whether or not probable cause to arrest exists is a legal determination that is not

7  properly the subject of expert opinion testimony.") (citing *Stuart v. United States*, 23 F.3d 1483,

8  1487 (9th Cir. 1994)).

9         In the instant case, the Court agrees with Plaintiff that much of the language used in Mr.

10  Martin's expert report constitutes impermissible legal conclusions that are inadmissible at trial.  For

11  example, he headlines his opinion sections with language such as "Officer Mehserle possessed

12  sufficient probable cause to arrest Plaintiff Carrethers . . . ."  *See* Joint PTS, Docket No. 66, App. E,

13  at 9.  His report also tracks the language of the legal standards the jury is charged with applying.

14  For example, stipulated proposed jury instruction number 5 tells the jury that a police officer may

15  use "objectively reasonable" force under Fourth Amendment.  *See* Joint Proposed Jury Instructions,

16  Docket No. 72.  Instruction number 9 provides that an officer may arrest someone if he or she has

17  "probable cause to believe the plaintiff has committed or was committing a crime."  Mr. Martin uses

18  this language extensively in his report, and he confirmed in deposition that he had reviewed the

19  Ninth Circuit's model jury instructions in connection with presenting his opinions.  *See* Martin

20  Depo., MIL 3, Ex. B, at 203:4-14.  He also offers opinions on the legality of certain conduct such as,

21  *e.g.*, the addition of "cover charges" to justify an officer's arrest.  *See* Martin Depo. at 378-79.  In

22  effect, much of his report reads more like a legal brief than an expert's testimony, providing

23  citations to statutes and case law and offering his analysis of the legal significance of various facts as

24  provided by Defendants.  *See, e.g.*, Martin Report at 10:6-7 ("Under these circumstances, it it would

25  be reasonable for any trained and reasonable officer to believe that probable cause to arrest Mr.

26  Carrethers . . . existed."); *id*. at 12-13 (describing "objectively reasonable" force standard according

27  to Supreme Court case law).  This is inappropriate for expert testimony before the jury.

28

**United States District Court**

For the Northern District of California

1    Accordingly, Mr. Martin must avoid testifying in terms of legal conclusions that will mirror

2   the jury's legal instructions or offer other legal conclusions that would simply tell the jury how he

3   would rule.  He should not use legal terms such as "probable cause," "objectively reasonable," and

4   "legally authorized."

5    On the other hand, Martin may offer testimony that underpins legal conclusions, such as

6   whether the officers' conduct comported with police training and procedures, provided that he does

7   not go so far as to actually state any legal conclusion.  In *Bojcic*, for example, a case on which

8   Defendants rely, the court limited the language the expert could use in proffering his opinion so that

9   it would not track the legal language at issue in the case.  *Estate of Bojcic v. City of San Jose*, No.

10   C05 3877 RS, 2007 WL 3314008, at *2-3 (N.D. Cal. Nov. 6, 2007).  The court determined that an

11   expert could testify regarding officers' alleged use of excessive force, but with the following caveat:

12       At trial, Van Blaricom should similarly avoid offering any legal opinions, and should
13       do so by not stating his conclusions in terms that mirror the instructions that will be
          given to the jury. Thus, while Van Blaricom may freely opine that Officer Guess
          should not have acted in the manner that he did, or that he should have done
14       something else, he should not be asked for or volunteer an opinion that Office Guess
          acted unconstitutionally or exercised "excessive force." This order does not bar Van
15       Blaricom from using the terms "reasonable" or "unreasonable" in his testimony, but
          both the questions posed to him and his answers should avoid language in the form of
16       a legal conclusion.

17   *Id.* at *3; *see also Smith v. City of Hemet*, 394 F.3d 689, 703 (9th Cir.2005) (en banc) (considering

18   expert testimony as to "whether the officers' conduct comported with law enforcement standards"

19   and whether "the officers could and should have used control holds to complete the arrest rather than

20   to sic Quando on him once they had him restrained on the ground"); *Carter v. County of Santa*

21   *Clara*, No. C 05-3974-JF (RS), 2008 WL 205597, at *1 (N.D. Cal. Jan. 24, 2008) (holding that

22   expert's opinion as to whether "the force used by the officers was appropriate" was "not a legal

23   conclusion" and was therefore admissible, but that the expert "should not be asked to volunteer an

24   opinion as to whether the Defendants acted unconstitutionally or exercised 'excessive force'");

25   *Morales v. County of Ventura*, No. CV 01-4121-PJW, 2003 WL 25667621, at *2 (C.D. Cal. July 14,

26   2003) (expert can "explain what he believes proper police procedures would have dictated that

27   night: how close would he have gotten to the two men? why? would he have kept a car or other

28   barrier between him and the two men? why? He will not be able to testify that Defendant Herbst was

negligent or that her conduct was reprehensible (as he testified in his deposition)"); *Tan v. City & County of San Francisco*, No. No. C 08-01564 MEJ, 2010 WL 726985, at *4 (N.D. Cal. Feb. 26, 2010) (permitting testimony as to "whether the force used by the officers fits within the generally accepted methods and rationale for using force by police officers").

Applying these concepts to Mr. Martin's expert report, he could testify, *e.g.*, as to his opinions about:

1.  How officers are trained to respond to people who yell at the police or "g[e]t in the officer's face."  *See* Martin Rep. At 14-15.

2.  What kinds of behaviors indicate  that someone is about to attack an officer, including whether "rapidly approaching [an officer] from behind and yelling at him while challenging him to fight with his fists clenched," or any combination of those facts described, would indicate that someone was about to attack an officer.  *See* Martin Rep. At 7; *see also id.* At 10 (describing "pre-attack" indicators).

3.  What types of behavior indicate that one is "shedding property," and what that indicates.  *See* Martin Rep. at 7-8.

4.  How a rear wrist lock and/or leg sweep are properly executed and when police are trained to use it.  *See* Martin Rep. at 9-10.

5.  The significance of assuming a "bladed fighting stance."  *See* Martin Rep. at 9, 13.

6.  What kind of conduct officers are trained to spot as "active" resistance, and how are they trained to respond to it.  *See* Martin Rep. at 13.

7.  How many officers are typically required to restrain a suspect.  *See* Martin Rep. at 13.

8.  How an officer would be trained to respond to a person who kicks/attempts to kick the officer.  *See* Martin Rep. at 10.

9.  What a hobble restraint is and when officers are trained to use it.  *See* Martin Rep. at 14.

10. What is the proper method for transporting someone in a hobble restraint, and what kinds of injuries could result from improper transport.  *See* Martin Rep. at 14.

**United States District Court**
For the Northern District of California

1        This list is not intended to be exhaustive, but rather to serve as a guide for the kinds of

2   opinions Martin may and may not provide.  In addition, the parties are instructed to "explore

3   [Martin's opinions] through hypothetical questioning so as to avoid invading the province of the

4   jury." *Engman v. City of Ontario*, No. EDCV 10–284 CAS (PLAx), 2011 WL 2463178, at *7 (C.D.

5   Cal. June 20, 2011).

6        2.    <u>Opinions not contained in Mr. Martin's report</u>

7        Plaintiff argues next that Mr. Martin should be precluded from offering any opinions not

8   contained in his expert report, including the following topics on which he offered no opinion during

9   his deposition: (1) BART policies or procedures besides the use of force policy, *see* MIL 3 at 3; (2)

10  whether Mehserle had time to consider alternative options to address Plaintiff's behavior, *id*.; (3)

11  any opinions not contained within his Rule 26 report; and (4) whether it was necessary to carry

12  Plaintiff to the car by the hog-tie strap, *id*. at 4.

13       The Court **GRANTS** in part and **DENIES** in part this MIL.

14       Based on the deposition testimony provided by Plaintiff, Martin appears clear that he has no

15  opinion as to any BART policies other than the use of force policy.  Accordingly, subject to a

16  contrary showing by Defendants, Mr. Martin may not testify as to any BART policies and

17  procedures about which he refused to offer an opinion in his report and in deposition.

18       Second, Defendants oppose Plaintiff's attempt to exclude Martin's testimony as to whether

19  Mehserle had time to consider alternative options to addressing Plaintiff's behavior.  They contend

20  that, contrary to Plaintiff's assertion that Martion had no opinion as to whether Mehserle could have

21  considered other options, Martin did form an opinion on this issue and testified as such during his

22  deposition.  *See* Opp. 3 at 3-4.  The Court agrees that Martin's testimony is more equivocal than

23  absolute, and while portions of his testimony may be subject to impeachment, total exclusion would

24  not be appropriate.  Accordingly, Martin is not precluded from offering an opinion on this topic.

25       Third, Defendants argue that Martin was substantially justified in excluding opinions

26  regarding the "cover charge" issue from his report, because he was not aware of it before he

27  completed the report.  However, he did testify about the issue in his deposition.  On the other hand,

28

United States District Court

For the Northern District of California

1  some portion of the testimony regarding cover charges is likely to fall within the Court's prohibition

2  of legal conclusions discussed above.  He may offer any opinions disclosed in deposition.

3        Beyond this specific example, Defendants do not challenge Plaintiff's more general request

4  that Martin be precluded from offering any opinions not contained in his report.  In addition,

5  Defendants do not respond to Plaintiff's request to preclude Martin from testifying as to whether it

6  was necessary to transport Plaintiff in the hog-tie strap.  Based on the excerpts before the Court,

7  Martin's response appears clear that he does not have an opinion as to whether it was necessary to

8  actually transport Plaintiff in the hog-tie strap.  *See* Martin Depo., MIL 3, Ex. B, at 214:1-13.

9  Accordingly, Martin may not offer opinions about the necessity of transport in the hog-tie, as well as

10  any other opinions not offered in his Rule 26 report.

11        3.      Opinions based on speculation

12        Plaintiff next seeks to preclude Martin from testifying as to any topics on which he claimed

13  during his deposition he had insufficient information to form an opinion.  These topics include: (1)

14  who added the Penal Code § 148 charge and why, MIL 3 at 4-5; and (2) what kind and extent of

15  training Mehserle received, *id*. at 5-6.

16        Defendants oppose the first request on the grounds that Martin's expertise in the law

17  enforcement industry allows him to testify as to the practice of adding supplemental charges.  *See*

18  Opp. 3 at 5.  However, Plaintiff raises a more specific point here that Martin should not be permitted

19  to speculate who added the charge or why, as he did not have any information on those points during

20  his deposition.  Plaintiff's second request concerns a topic Defendants contend is irrelevant to the

21  instant case and is the subject of Defendants' second MIL.  However, as the Court explains in more

22  detail below, such evidence is relevant.  Nonetheless, Defendants have offered no counter-argument

23  regarding Martin's failure to provide opinions on this topic.

24        Accordingly, the Court **GRANTS** Plaintiff's MIL to exclude opinions on these topics.

25        4.      Opinions lacking probative value

26        Lastly, Plaintiff seeks to exclude testimony from Mr. Martin that Plaintiff argues would be of

27  no probative value for the jury.  Specifically, Plaintiff seeks to prevent Martin from testifying as to

28  whether certain actions not taken by Defendants "would [have been] nice" for them to do, in the

United States District Court

For the Northern District of California

1   absence of any opinion as to whether failing to do those things would breach BART policies.  *See*

2   MIL 3 at 6.  Secondly, Plaintiff seeks to prevent Martin from testifying as to his aggregate "grade"

3   of Defendants' conduct, where he failed to evaluate any of their actions separately and stated only

4   that overall their conduct towards Plaintiff constituted a "C, average performance."  MIL 3 at 6.

5   Plaintiff argues that these generalized statements provide no assistance to the jury and require no

6   specialized knowledge.

7          However, as Defendants contend, it appears that Martin was merely offering his opinion of

8   the distinction between best practices and required practices.  *See* Opp. 3 at 5-6.  While Plaintiff's

9   counsel challenged Martin's choice of language, and Plaintiff may seek to use some of Martin's

10  broader statements to impeach his credibility, Martin's testimony is nonetheless relevant.

11  Accordingly, subject to the Court's previous restrictions on legal conclusions, the Court **DENIES**

12  Plaintiff's MIL to exclude such testimony.

13  D.     Plaintiff's MIL No.4

14         Plaintiff's fourth and final MIL requests that the Court take judicial notice of and admit into

15  evidence the Superior Court's docket sheet and minutes indicating that criminal charges against

16  Plaintiff were dismissed on the DA's motion for "insufficient evidence."  MIL 4 at 1; MIL 4, Ex. A,

17  at 1.  Plaintiff contends that this evidence satisfies an element of his malicious prosecution claim,

18  that the criminal prosecution ended in Plaintiff's favor.  MIL 4 at 1 (citing CACI 1500 (describing

19  elements of malicious prosecution to include "[t]hat the criminal proceeding ended in [*name of*

20  *plaintiff*]'s favor"); *Usher v. City of Los Angeles*, 828 F.2d 556, 562 (9th Cir. 1987) (dismissal for

21  lack of evidence constitutes a termination in plaintiff's favor).  Plaintiff requests that the Court take

22  judicial notice of the docket pursuant to Fed. R. Evid. 201, which permits courts to take judicial

23  notice of facts "not subject to reasonable dispute in that [they are] . . . capable of accurate and ready

24  determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid.

25  201(b).

26         Defendants argue that a dismissal for insufficient evidence is not a termination favorable to

27  Plaintiff.  However, this contention is incorrect as a matter of law.  Both California and Ninth

28  Circuit case law indicate that a dismissal for lack of evidence constitutes a termination in Plaintiff's

**United States District Court**
For the Northern District of California

favor because it reflects the opinion that the charges lacked merit.  *See Jaffe v. Stone*, 18 Cal. 2d 146, 151 (1941) (dismissal constitutes a termination in favor of the plaintiff "where the prosecuting attorney at the trial enters a *nolle prosequi* for lack of evidence"); *Lackner v. LaCroix*, 25 Cal.3d 747, 750 (1979) (including circumstances "where the district attorney seeks dismissal of the prosecution of a criminal action for lack of evidence" as among the kinds of terminations that are favorable to the plaintiff because they are "of such a nature as to indicate the innocence of the accused"); *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1068 (9th Cir. 2004) (a dismissal can satisfy favorable determination requirement "if it reflects the opinion of the prosecuting party or the court that the action lacked merit or would result in a decision in favor of the defendant"); *Bulkley v. Klein*, 206 Cal. App. 2d 742, 750 (1962) ("After the entry was made in the justice court docket showing that the case was dismissed for lack of evidence . . . [a] final termination of the criminal case favorable to the plaintiff was [] proved."); *see also Hemstreet v. Duncan*, No. CV 07-732-ST, 2008 WL 409165, at *8, (D. Or. Feb. 8, 2008) ("[A] dismissal is 'indicative of the innocence' of the accused and a favorable determination on the merits when the 'district attorney obviously was of the opinion that the facts did not justify an indictment.'") (discussing Oregon law with same general rules as California law regarding termination in plaintiff's favor).  Courts have distinguished this kind of termination from those based on procedural or technical grounds, which may not be favorable to the plaintiff because they do not tend to indicate his innocence.  *See Jaffe*, 18 Cal.2d at 150 ("If [the termination] is of such a nature as to indicate the innocence of the accused, it is a favorable termination sufficient to satisfy the requirement. If, however, the dismissal is on technical grounds, for procedural reasons, or for any other reason not inconsistent with his guilt, it does not constitute a favorable termination.").

The case Defendants cite in opposition, *Fuentes v. Berry*, 38 Cal. App. 4th 1800 (1995), does not support their argument.  *Fuentes* involved a dismissal pursuant to a *settlement*, which "generally does not constitute a favorable termination."  *Id*. at 1808.  As the court went on to note, "On the other hand, a voluntary dismissal, even one without prejudice, may be a favorable termination which will support an action for malicious prosecution."  *Id*. (citing *MacDonald v. Joslyn*, 275 Cal. App. 2d 282, 289 (1969) (holding that a voluntary dismissal without prejudice is a favorable termination

**United States District Court**
For the Northern District of California

1   for purposes of malicious prosecution)).  A dismissal for failure to prosecute is similarly a favorable

2   termination.  *Id*. (citing *Villa v. Cole*, 4 Cal.App.4th 1327, 1335 (1992)).  Thus, according to

3   *Fuentes*, if the facts contained in the docket sheet are accurate, as both parties concede, they

4   demonstrate a termination in Plaintiff's favor.

5          At oral argument, Defense counsel proffered a distinction between "lack of evidence" and

6   "insufficient evidence," contending that the former was a favorable termination but the latter was

7   not.  The Court fails to discern a meaningful difference between the two for purposes of this

8   analysis.  First, there is no indication in the case law that "lack of evidence" must contain the

9   meaning suggested by the defense; that is, a complete absence of evidence (rather than simply a lack

10  of enough evidence to proceed with the case).  More importantly, whether a prosecutor has

11  insufficient evidence or a total absence of evidence, either indicates that the prosecution will not

12  succeed.  This is the relevant inquiry, and the case law is unambiguous that such a termination is in

13  Plaintiff's favor.  *See Awabdy*, 368 F.3d at 1068.  Indeed, the Court has found no case in which a

14  court found no favorable termination where the dismissal was for insufficient (or lack of) evidence.

15         Defense counsel also provided information to the Court for the first time at oral argument as

16  to what alternative reasons they would offer for the DA's dismissal of Plaintiff's prosecution.

17  Counsel indicated that the DA would testify that it had no choice but to dismiss the charges against

18  Carrethers because the arresting officer had become unavailable as a witness.  Specifically, Officer

19  Mehserle had invoked his Fifth Amendment rights and refused to talk to the DA's office, thereby

20  leaving the office without its chief witness to testify against Mr. Carrethers.  Counsel contends that

21  this reasoning for the dismissal indicates that it was not a dismissal in Plaintiff's favor.

22         Defendants' proffered reason, even if true, would not change the result.  Indeed, the primary

23  California Supreme Court case on this issue, *Jaffe v. Stone*, cites to a case in which charges were

24  dropped due to witness unavailability as an example of a termination in the plaintiff's favor.  *See*

25  *Jaffe*, 18 Cal.2d at 151 (finding favorable termination "where the prosecuting attorney at the trial

26  enters a nolle prosequi for lack of evidence") (citing *McLaughlin v. Lehigh Valley R. Co.*, 93 N.J.L.

27  263, 265 (1919) (finding favorable termination where "a nolle pros. was entered on the indictment

28  by the prosecutor of the pleas because of his inability to produce either Timms or Bernstock as

United States District Court

For the Northern District of California

1  witnesses; both of them having removed from the state"). Defendants' contention that witness

2  unavailability negates a finding of favorable termination is thus unpersuasive.

3       Accordingly, the Court takes judicial notice of the state court documents and finds that the

4  DA's dismissal for insufficient evidence was a termination in Plaintiff's favor.

5  E.    Defendants' MIL No. 1 - Evidence Relating to Oscar Grant

6       Defendants' first MIL seeks to preclude the introduction of any evidence or testimony

7  concerning Oscar Grant and the events surrounding his death. Defendants list a number of specific

8  topics within this broad category that they seek to exclude from the trial and ask the Court to issue

9  an order:

> 1.     Admonishing all parties, their counsel, and each party's witnesses not to
> attempt to introduce the above-described evidence in any form, including not to
> suggest, comment directly or indirectly on, or refer to the evidence in any way before
> the jury without first obtaining the Court's permission; and
> 2.     Directing all counsel to warn, caution, and instruct, each and every one of the
> witnesses not to make any reference to such evidence and to follow the same order.

MIL 1 at 2. Defendants seek to exclude this evidence on the grounds that it is irrelevant, unduly

prejudicial, and improper character evidence.

15       Plaintiff offers only a partial opposition to this MIL. Plaintiff agrees that this case is not

16  about Oscar Grant, but contends that certain limited evidence should be admitted. First, Plaintiff

17  contends that there should be voir dire on this issue because potential jurors will already know who

18  Grant and Mehserle are they must be questioned on the subject to ensure a fair and impartial jury.

19  Opp. 1 at 1. Second, Plaintiff seeks to introduce some testimony in connection with Defendants'

20  police procedures expert, whose report in the instant case is based on work he did in the Grant case,

21  which is relevant "as a basis of his opinion and to show possible bias." *Id*. Third, Plaintiff contends

22  that exceptions to the character evidence rule allow certain limited testimony about Mehserle's

23  involvement in the Grant shooting.

24       1.    Voir Dire

25       The parties' joint proposed voir dire questions include questions about Mehserle and Grant.

26  *See* Docket No. 68. Thus, the Court agrees that the proposed voir dire questions regarding the Grant

27

28

1   incident may be used along with any follow-up questions that may be necessary depending on

2   individual prospective jurors' responses.  The Court therefore **DENIES** the MIL as to voir dire.

3         2.   <u>Mr. Martin's Expert Testimony</u>

4         Plaintiff argues that it must ask Defendants' expert, Jeffrey Martin, certain limited questions

5   about the Oscar Grant incident, because Martin was retained in connection with that case and much

6   of his work on the Grant matters forms the basis for his opinions here.   In addition, Plaintiff argues

7   that he must be permitted to challenge Martin's potential biases, which are apparent from some of

8   his prior work.  The Court agrees that Plaintiff may question Martin, on a limited basis, regarding

9   his work on Grant-related matters insofar as such testimony is necessary to explore the bases for his

10  opinions and to reveal possible bias or lack of credibility.  The Court therefore **DENIES** the MIL to

11  exclude this line of questioning, without prejudice to context-specific objections during trial.

12        3.   <u>Exceptions to Character Evidence Rule</u>

13        Lastly, Plaintiff contends that certain exceptions to Rule 404 allow for the introduction of

14  limited evidence relating to Oscar Grant.  Rule 404(b) provides that "[e]vidence of other crimes,

15  wrongs, or acts is not admissible to prove the character of a person in order to show action in

16  conformity therewith."

17        a.   <u>Prior Conviction</u>

18        Plaintiff contends that Mehserle's prior conviction can be used for impeachment under Rule

19  609, which provides that prior convictions of an accused punishable in excess of one year, if less

20  than ten years old, can be admitted "shall be admitted if the court determines that the probative value

21  of admitting this evidence outweighs its prejudicial effect to the accused."  Fed. R. Evid. 609(a)(1).

22  Plaintiff argues that Mehserle's prior conviction for involuntary manslaughter should be admitted to

23  impeach his credibility.  *See* Opp. 1 at 3 (citing Rule 609, adv. comm. notes).  However, the Court

24  finds that the probative value of this evidence does not outweigh its prejudicial effect here, as

25  Mehserle's conviction will only serve to convince the jury that since he acted with excessive force in

26  a prior case, he must have done so here.  Accordingly,   the Court **GRANTS** the MIL to exclude

27  evidence of Mehserle's prior conviction.

28        b.   <u>Acts to Show Intent and Motive</u>

United States District Court

For the Northern District of California

1    Plaintiff next contends that certain evidence is admissible under Rule 404(b)'s exception

2  allowing evidence of prior or subsequent bad acts if they provide "proof of motive, opportunity,

3  intent, preparation, plan, knowledge, identity, or absence of mistake or accident."  Specifically,

4  Plaintiff contends that Mehserle's subsequent actions with respect to Oscar Grant are relevant to

5  show his motive and intent to deprive Plaintiff of a constitutional right and to commit battery.  In

6  addition, Plaintiff contends the evidence shows Mehserle's motive and intent "to use force in

7  reaction to a minor incident, and escalate a minor offense into resisting arrest."  Opp. 1 at 4.

8  Plaintiff also argues that Mehserle's subsequent acts provide evidence that he harbored ill-will

9  toward citizens and intended injury.  *Id*. at 5.

10    The Court finds that such evidence is impermissible character-propensity evidence under

11  Rule 404(b). *See Gates v. Rivera*, 993 F.2d 697, 700 (9th Cir. 1993) ("The question to be resolved

12  was whether, objectively, his use of force had been excessive. His past conduct did not bear on that

13  issue.") (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)); *Tanberg v. Sholtis*, 401 F.3d 1151,

14  1167 (10th Cir. 2005) (finding "evidence of three other occasions when Officer Sholtis allegedly

15  arrested individuals without probable cause or used excessive force" inadmissible).

16    However, at oral argument, Plaintiff's counsel raised a possible exception to the Court's

17  general ruling that this evidence is inadmissible.  Namely, to the extent that Plaintiff seeks to elicit

18  testimony from Defendant Mehserle as to his use, in previous and subsequent cases, of the same

19  formulaic language to justify his use of force (*e.g.*, "bladed fighting stance,"), this kind of specific

20  evidence may be probative of intent, modus operandi, and other relevant impeachment-based

21  purposes that challenge the credibility of his testimony and may be admissible under 404(b).  On the

22  other hand, evidence of more general conduct, *e.g.*, a purported pattern of using certain kinds of

23  force against arrestees while they are on the ground, would run afoul of 404(b)'s restrictions on

24  character evidence.

25    Accordingly, with the exception noted above for specific evidence relevant to impeach Mr.

26  Mehserle's credibility on which the court reserves judgment until trial, the Court **GRANTS** this

27  MIL to exclude any character evidence Plaintiff seeks to admit regarding Mehserle's actions during

28  the Oscar Grant incident or prior incidents.

F.      Defendants' MIL No. 2 - BART Policies & Training

Defendants' second MIL seeks to exclude evidence that relates to claims that have been dismissed, including Plaintiff's claim against BART under § 1983 and *Monell*, his claim for violence and intimidation based on race in violation of Cal. Civ. Code § 51.7, and his claim for failure to intervene under § 1986.  MIL 2 at 1.  Defendants contend that such evidence includes any evidence of "BART's customs, policies, practices, training and subsequent measures, as well as . . . evidence of racial discrimination."  *Id*. at 1-2.  More specifically, Defendants oppose any attempt by Plaintiff "to introduce evidence of BART Police Department customs, policies and practices as well as BART Police Department reviews and measures that followed the January 1, 2009 shooting of Oscar Grant III in a separate incident, including reports prepared by the National Organization of Black Law Enforcement Executives (NOBLE), the law firm of Meyers Nave, and BART's own pre- and post-incident training, customs, policies and measures."  *Id*. at 2.  Defendants contend that such evidence is irrelevant, prejudicial, and improper evidence of subsequent remedial measures.

The Court **GRANTS** in part and **DENIES** in part this MIL.

Plaintiff does not oppose Defendants' request to exclude evidence of "subsequent remedial measures taken in response to the Grant shooting."  Opp. 2 at 1.  In addition, Plaintiff does not oppose Defendants' request to exclude "evidence of race or the dismissed race claims."  *Id*. Accordingly, the Court **GRANTS** Defendants' MIL to exclude such evidence.

Plaintiff offers a limited opposition to other categories of evidence that could be construed to fall within Defendants' second MIL.

First, Plaintiff seeks to offer evidence of the individual officers' "integral participation" in the use of force against Plaintiff.  *See* Opp. 2 at 1-2 (citing, *e.g.*, *Boyd v. Benton County*, 374 F.3d 773, 780 (9th Cir. 2004) (describing requirement that plaintiff show each officer was an "integral participant" in the use of force in order to support § 1983 liability, even if each officer's conduct does not itself "rise to the level of a constitutional violation").  The Court agrees that evidence of the officers' integral participation is relevant to establishing their liability for Plaintiff's alleged harms. However, some of the ways Plaintiff proposes to establish this liability–through an officer's observations and beliefs about the necessity of force–are not probative of that officer's integral

17

United States District Court

For the Northern District of California

1   participation because mere observation of illegal conduct is insufficient. Opp. to D's MIL 2 at 2; *see*

2   *Blankenhorn v. City of Orange*, 485 F.3d 463, 481 n.12 (9th Cir. 2007) ("'[I]ntegral participation

3   does not require that each officer's actions themselves rise to the level of a constitutional violation.'

4   But it does require some fundamental involvement in the conduct that allegedly caused the

5   violation."); *Chuman v. Wright*, 76 F.3d 292, 293 (9th Cir. 1996) ("Being a mere bystander [is]

6   insufficient."). Thus, while Defendants' observations and beliefs may be relevant to other portions

7   of Plaintiff's claims, they do not indicate integral participation. On the other hand, testimony

8   regarding an officer's *response* to his observations of force (*e.g.*, whether he then participated in the

9   use of force), and testimony regarding whether the officer documented the use of force–insofar as

10  those responses are probative of his (or other officers') fundamental involvement in the use of

11  force–is appropriate. Accordingly, with these caveats, the Court **DENIES** the MIL to exclude

12  evidence of integral participation (*e.g.*, officers' response showing actual participation, not mere

13  thoughts and beliefs, are admissible).

14         Second, Plaintiff seeks to introduce evidence of post-January 1, 2009 events that are directly

15  relevant to the Carrethers incident, such as the dismissal of criminal charges against Plaintiff and

16  BART's Internal Affairs memorandum regarding Plaintiff. *See* Opp. 2 at 3. Defendants' broad MIL

17  purports to exclude any evidence of BART conduct after January 1, 2009. *See* MIL 2 at 6 (disputing

18  relevance of "any measures taken after the January 1, 2009 incident"). Plaintiff has agreed, as noted

19  above, not to seek to introduce evidence of subsequent remedial measures related to the Oscar Grant

20  incident. However, he seeks to introduce evidence directly touching on the Carrethers incident.

21  Because, as explained above, the Court has already granted Plaintiff's request for judicial notice

22  regarding the dismissal of Carrethers' criminal charges, that issue is moot. As for the Internal

23  Affairs memorandum regarding the Carrethers case, the Court finds that this evidence is of limited

24  probative value and carries a substantial risk of prejudice insofar as Plaintiff seeks to impute

25  BART's lack of responsiveness before the Grant shooting to the individual Defendants. The Court

26  therefore **GRANTS** the MIL to exclude this document without prejudice to a specific showing of

27  relevance by Plaintiff.

28

United States District Court

For the Northern District of California

1    Finally, Plaintiff opposes Defendants' request to exclude any evidence of BART policies and

2    training, as such evidence is directly relevant to Plaintiff's claims and to whether Defendants acted

3    reasonably.  *See* Opp. 2 at 3-6.  The Court agrees.  As Plaintiff points out, whether individual

4    Defendants breached BART policies goes to the reasonableness of their conduct, e.g., the failure to

5    preserve evidence may be relevant to motive and intent for purposes of malicious prosecution.

6    While Defendants argue that evidence of BART's policies would give the jury the impression that

7    BART was on trial and that any deficiencies on BART's part could be imputed to Defendants,

8    Defendants fail to explain how evidence of the individual Defendants' failure to follow BART

9    policies and training would lead to such unfair prejudice. Accordingly, the Court **DENIES** the MIL

10   to exclude evidence of BART's policies and practices without prejudice to Defendants raising a

11   narrower relevance or prejudice objection at trial.

12   G.    Defendants' MIL No. 3 - Spoliation

13   Defendants' third MIL seeks to prevent Plaintiff from introducing any evidence alleging

14   tampering, falsification, or spoliation of evidence—"including but not limited to

15   failure to interview witnesses; failure to collect station videotape; and failure to report to Internal

16   Affairs the abuse alleged by Carrethers"—absent a foundational showing *in camera* pursuant to Fed

17   R. Evid. 104 that such tampering occurred.  See MIL 3 at 1.  Rule 104(b) provides that "[w]hen the

18   relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it

19   upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of

20   the condition."  Absent such a foundational showing, Defendants contend such evidence is irrelevant

21   and prejudicial.

22   Plaintiff contends in response that he does not seek to argue that Defendants falsified or

23   tampered with evidence.  Rather, he seeks to introduce evidence that Defendants already admit: that

24   they failed to collect and preserve evidence and failed to adequately document the incident.  *See*

25   Opp. 3 at 1.

26   The Court finds that such evidence is relevant and admissible, because: (1) the fact that

27   evidence was not collected may explain why Plaintiff cannot corroborate his claims; and (2) this

28   failure may indicate an intent to avoid uncovering adverse evidence.  As Plaintiff points out,

United States District Court

For the Northern District of California

1    Defendants admit they failed to collect and preserve evidence, and Plaintiff will offer evidence that

2    they were trained and obligated to do so.  *See* Opp. 3 at 2.  *See United States v. Brady*, 579 F.2d

3    1121, 1127 n.1 (9th Cir. 1978) ("[W]hat a defendant does, or fails to do, may indicate intent, or lack

4    of intent.").  Accordingly, the Court **DENIES** Defendants' third MIL.

5         Plaintiff also argues in response that the Court should give an adverse inference instruction

6    regarding Defendants' failure to collect evidence.  As the Court noted at the pretrial conference, it

7    will reserve ruling on the adverse inference instruction pending Plaintiff's presentation of evidence.

8    H.    Defendants' MIL No. 4 - Clark Testimony on Credibility

9         Defendants' fourth MIL seeks to exclude Plaintiff's expert, Roger Clark, from offering

10   testimony regarding Defendants' credibility.  Defendants contend that such testimony is improper

11   expert testimony under Rule 702 because it is not helpful and invades the province of the jury.  *See*

12   MIL 4 at 1-2.

13        The motion is **GRANTED** in part and **DENIED** in part.  Mr. Clark shall not be allowed to

14   opine directly on the credibility of the officers as he does not have any specialized knowledge that

15   would assist the jury in assessing credibility.  However, given the Court's ruling on Defendants'

16   MIL no. 2, Mr. Clark may opine about the alleged failure of the officers to follow standard practices

17   and procedures–*e.g.*, their failure to include the amount of detail required in a police report.  The

18   jury could infer from this failure that the report is not credible.  Mr. Clark may also testify as to the

19   basis of his opinion (*e.g.*, that he credited certain testimony over others in forming certain opinions)

20   without explaining why in such a way as to opine on credibility.

21   I.    Defendants' MIL No. 5 - Bifurcation of Punitive Damages

22        Defendants' fifth and final MIL seeks to bifurcate the issue of punitive damages and exclude

23   "any and all evidence (testimony and/or documentary, including references by experts and counsel)

24   that relates to punitive damages, including any and all references thereto, until the punitive-damages

25   phase of the trial."  MIL 5 at 1.  Defendants contend that bifurcation is justified pursuant to Rule

26   42(b) of the Federal Rules of Civil Procedure, which provides that "[f]or convenience, to avoid

27   prejudice, or to expedite and economize, the court may order a separate trial of one or more separate

28   issues, claims, crossclaims, counterclaims, or third-party claims."  Specifically, Defendants seek to

United States District Court

For the Northern District of California

1  exclude all references to punitive damages and all evidence regarding whether Defendants have

2  acted with "malice, oppression and fraud" prior to the jury's decision on liability.  *See* MIL 5 at 4.

3  This Court has broad discretion to determine whether to bifurcate a trial.  *See Hangarter v.*

4  *Provident Life &Acc. Ins. Co.*, 373 F.3d 998, 1021 (9th Cir. 2004)

5      The Court **GRANTS** in part and **DENIES** in part this motion.  The Court agrees with

6  Plaintiff that it is not possible to bifurcate the trial as Defendants request because there is substantial

7  overlap between the elements of Plaintiff's causes of action and the intent and malice required to

8  demonstrate that punitive damages are warranted. "[S]eparation has been denied when the evidence

9  on the two subjects is overlapping or the liability and damages issues are so intertwined that

10 efficiency will not be achieved or confusion may result from any attempt at separation."  9A C.

11 Wright, A. Miller, & M. Kane, Fed. Prac. & Proc. Civ. § 2390 (3d ed. 2011); *see Martin v.*

12 *Heideman*, 106 F.3d 1308, 1312 (6th Cir. 1997) (holding in § 1983 excessive force case that

13 "because the extent of the plaintiff's damages was relevant to the question of liability, the district

14 court abused its discretion by bifurcating the trial.").  Defendants provide no detail or explanation as

15 to how their proposed bifurcation would work.

16      However, the Court finds that a bifurcation in the form of reserving all testimony as to the

17 amount of punitive damages requested and the defendants' finances as part of that calculation is

18 appropriate.  Accordingly, the Court will exclude all evidence of wealth and net worth from Phase 1

19 of the trial.  The jury will receive instructions regarding the requirements for awarding punitive

20 damages and, should the jury find that punitive damages are warranted, the Court will hold a brief

21 Phase 2 for the purposes of determining the quantity of those damages.

22                    **III.   WITNESSES**

23      A witness or exhibit not listed in a party's pretrial conference statement (re-printed below)

24 may not be called or used without good cause.  This rule does not apply to true rebuttal witnesses

25 (other than experts).  Defense witnesses are normally considered case-in-chief witnesses, not

26 "rebuttal" witnesses.

27      Below are the witness lists provided to the Court in the parties' joint pretrial statement.  The

28 parties shall file their final witness lists by noon, November 18, 2011.

A.  Plaintiffs

    1.   Plaintiff Kenneth Carrethers

    2.   Defendant Johannes Mehserle

    3.   Defendant Sgt. Keith Smith

    4.   Defendant Ofc. Douglas Horner

    5.   Defendant Ofc. Robert Haney

    6.   Defendant Ofc. Frederick Guanzon

    7.   Witness BART Chief Gary Gee

    8.   Witness BART Station Agent Heath Cunningham

    9.   Witness BART Station Agent Lila Dinkins

    10.  Plaintiff's police procedures expert Roger Clark.

B.  Defendants

    1.   Defendant Johannes Mehserle

    2.   Defendant Ofc. Douglas Horner

    3.   Defendant Ofc. Robert Haney

    4.   Defendant Ofc. Frederick Guanzon

    5.   Defendant Sgt. Keith Smith

    6.   Witness BART Station Agent Lila Dinkins

    7.   Witness BART Station Agent Heath Cunningham

    8.   Defense expert Jeffrey Martin

    9.   Defense expert Sgt. Eugene Wong

    10.  Sgt. David Chlebowski

    11.  Alameda Deputy District Attorney Robert Hartman

**United States District Court**
For the Northern District of California

## IV.   EXHIBITS

Based on the parties' submissions, the Court provides the following rulings on the attached chart.  Evidence to which objections are overruled are still subject to foundation requirements absent stipulation.  The Court assumes there are no issues of authenticity as to those documents held admissible.

The parties are reminded that they are required to list in advance all proposed documents which they anticipate may be used on direct or cross-examination, including for purposes of impeachment.  The parties are directed to file any updated, final exhibit lists (and lodge any additional documents with the Court) no later than Tuesday, November 15, 2011. Any objections thereto must be filed by November 17, 2011.

## V.   DISCOVERY RESPONSES & DEPOSITION DESIGNATIONS

The parties indicated in their pretrial statement, Docket No. 66 at 10, that they are currently unsure of what and how they may use discovery responses at trial.  The parties are directed to continue to meet and confer on this issue and submit any unresolved issues to the Court no later than November 16, 2011.

The parties have also stated that they anticipate using deposition testimony only for purposes of rebuttal.

## VI.   VOIR DIRE

Per this Court's order, the juror questionnaire drafted by the parties will be administered on Friday, November 18, 2011.  The parties shall be prepared to discuss those prospective jurors who shall be removed for cause based on their responses to the questionnaire first thing Monday morning, November 21.  The Court will conduct oral voir dire thereafter.  The parties will be permitted 15 minutes of voir dire each.

## VII.   JURY INSTRUCTIONS & VERDICT FORM

As noted at the pretrial conference, the Court will soon provide its set of proposed jury instructions with comments.  The parties are directed to meet and confer and try to reach an agreement on the instructions.  The parties shall file with the Court no later than November 16, 2011 a set of agreed upon instructions and the parties' respective positions and proposed language where

they disagree.  In addition, as previously ordered, the parties are directed to submit (1) a stipulated preliminary statement to the jury, and (2) a list of proposed special interrogatories related to qualified immunity (and, insofar as the special interrogatories affect the content of the rest of the verdict form, an updated proposed verdict form) no later than November 14, 2011.

After considering the parties' submissions regarding jury instructions and special interrogatories, the Court shall provide its proposed verdict form at a subsequent date.

This ruling disposes of Docket Nos. 63 & 67.


IT IS SO ORDERED.


Dated:  November 14, 2011

_____
EDWARD M. CHEN
United States District Judge

**United States District Court**
For the Northern District of California

24